1
2
3
4
5
6
7
8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA
9

10   LAURIE S.,

11                          Plaintiff,          CASE NO. 3:22-cv-05838-GJL

12          v.                                  ORDER ON PLAINTIFF'S
                                                COMPLAINT
13   COMMISSIONER OF SOCIAL
     SECURITY,
14
                           Defendant.
15

16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local

18   Magistrate Judge Rule MJR 13. *See also* Consent to Proceed Before a United States Magistrate

19   Judge, Dkt. 2. This matter has been fully briefed. *See* Dkts. 13, 16, 17.

20          After considering and reviewing the record, the Court concludes the Administrative Law

21   Judge ("ALJ") did not err in finding Plaintiff not disabled. The Court accordingly **AFFIRMS** the

22   Commissioner's final decision in this matter.

23

24

1

## I.    PROCEDURAL HISTORY

2

Plaintiff's applications for Supplemental Security Income ("SSI") benefits pursuant to 42

3

U.S.C. § 1382(a) (Title XVI) and disability insurance benefits ("DIB") pursuant to 42 U.S.C. §

4

423 (Title II) of the Social Security Act were denied initially and following reconsideration. *See*

5

Administrative Record ("AR") 160, 166. Plaintiff's requested hearing was held before the ALJ

6

on August 24, 2021. AR 35-93. On August 26, 2021, the ALJ issued a written decision in which

7

the ALJ concluded that Plaintiff was not disabled pursuant to the Social Security Act. AR 12-34.

8

On August 25, 2022, the Appeals Council denied Plaintiff's request for review, making

9

the written decision by the ALJ the final agency decision subject to judicial review. AR 1. On

10

November 2, 2022, Plaintiff filed a Complaint in this Court seeking judicial review of the ALJ's

11

written decision. Dkt. 5. Defendant filed the sealed AR regarding this matter on March 20, 2023.

12

Dkt. 10.

13

## II.    BACKGROUND

14

Plaintiff was born in 1967 and was 52 years old on the alleged date of disability onset of

15

July 11, 2019. AR 274. Plaintiff has a high school education. AR 95. According to the ALJ,

16

Plaintiff suffers from, at a minimum, the severe impairment of seizure disorder. AR 17.

17

However, the ALJ found Plaintiff was not disabled because she had the following residual

18

functional capacity ("RFC"):

19

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no
> climbing ladders, ropes, or scaffolds; no commercial driving; no exposure to

20

> hazards; occasional climbing of ramps and stairs; occasional crawling; occasional
> exposure to vibration; and occasional exposure to temperature and humidity

21

> extremes.

22

AR 22.

23

24

### III.   DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

In Plaintiff's Opening Brief, Plaintiff raises the following issues: (1) whether the ALJ properly evaluated Plaintiff's testimony; (2) whether the ALJ properly evaluated the medical opinions; and (3) whether the ALJ properly evaluated the lay witness testimony. Dkt. 13 at 2.[1]

### A.   Plaintiff Testimony

Plaintiff argues the ALJ erred by not giving specific, clear, and convincing reasons for discounting Plaintiff's testimony. Dkt. 13 at 16 (citing *Garrison v. Colvin*, 759 F.3d 995, 1018-22 (9th Cir. 2014)).

Plaintiff testified that she previously worked as a cosmetologist until she was hospitalized for a major epileptic seizure in the Fall of 2017. AR 47. Prior to this, she described having "mini seizures" for several years, including while delivering services to customers. *See* AR 48; Dkt. 13 at 11 ("It means I would just stand there for a little bit and then . . . people . . . [would say,] what's wrong with you? What's wrong with you? [And then I would say,] Okay, I'm okay, now."). Plaintiff sought treatment with a neurologist and began taking medications, which helped to "control the seizures." AR 51. Plaintiff testified that, while she does not have major seizures anymore, she still occasionally has "mini seizures" like those she suffered prior to 2017. *Id.* Her most recent major seizure was in December 2018. AR 72.

---

[1] Plaintiff also argues that the ALJ failed to include restrictions from the contested evidence in the RFC and incorrectly considered some of Plaintiff's impairments to not be severe. Dkt. 13 at 19. Because these are consequences of whether the ALJ erred on the three evidentiary issues, the Court need not address them separately.

1    However, Plaintiff testified that her seizure medications make her "tired all the time." *Id.*

2    While she agreed that this side effect had improved somewhat after medication adjustments, she

3    testified that she would still not be able to return to work because the medications also reduce her

4    cognitive functions and awareness. AR 52-54. She testified that she frequently forgets where she

5    parked and will absent-mindedly run into others with her cart while shopping. AR 55. Plaintiff

6    described an increased need for sleep, including frequent naps and rest because of pain in her

7    back, neck, and ankle. AR 63. She rated this pain at a seven out of ten. AR 65. She testified that

8    she spends most of the day resting and limits herself to staying at home alone most days,

9    spending the vast majority time either laying down or reclining. AR 67, 71. 85.[2]

10   The ALJ found that Plaintiff's testimony concerning the intensity, persistence, and

11   limiting effects of her symptoms was not entirely consistent with the medical evidence and other

12   evidence in the record. AR 23. This was not error. Plaintiff acknowledged that her medication

13   controlled her seizures, leaving her with "mini seizures" of relatively mild impact. *See* AR 343

14   (Plaintiff describing seizures as lasting around a minute and including losing consciousness,

15   blankly staring, not responding to those talking to her, and sometimes biting her tongue); AR 385

16   (January 2019 treatment notes stating, "her most recent seizure was on Christmas Day and . . .

17   consisted of unresponsive staring that lasted for approximately 1-2 minutes with resultant

18   confusion afterwards"). The medical record indicates that, after medication, these occur roughly

19   "every 2 or 3 months." AR 860, *see* AR 881 ("twice in 6 months she has awoken in the AM with

20

21   [2] During the hearing, the ALJ made several remarks which appear dismissive or antagonistic. *See, e.g.,* AR 63
22   ("Have you told somebody about that? … Why would [the neurologist] not note it? … Okay. That's puzzling. All
     right. Go ahead"); AR 65 ("I don't know what [Dr. Rabeea Rehman is] doing, but I would encourage you to, if it's,
     as you say, excruciating, I would encourage you to look into getting some imaging done of those areas. And I'm
23   surprised, if it's that bad, that it hasn't been done"); AR 66 ("I mean, the pain is, apparently, according to you,
     excruciating. I'd be looking into getting some treatment or pain medication or something or other, right? … I mean,
24   I wouldn't want you suffering here."). Given the non-adversarial nature of Social Security hearings, *see* 20 CFR
     404.1740, the transcript suggests the ALJ's behavior may have been gratuitously antagonistic.

1    a tongue bite. On a very regular basis she will awaken with jaw soreness or generalized body

2    soreness without clear witnessed night-time spells.").

3         Plaintiff's remaining testimony focused on the side effects of her medication — increased

4    need for sleep, inhibition of cognitive functions, and lack of awareness — and her physical pain.

5    *See* AR 52-71. The ALJ gave clear and convincing reasons why these effects were not so intense

6    as to prevent Plaintiff from working. First, Plaintiff successfully treated her sleep apnea with a

7    CPAP machine. AR 19; *see* AR 825 ("CPAP was applied and was effective in treating the

8    obstructive sleep apnea" and Plaintiff scored in the "normal" range on a scale measuring daytime

9    sleepiness), 852 ("She reports that she does feel that she is sleeping better. Using CPAP, she

10   feels less sleepy during the day"). However, Plaintiff unilaterally and abruptly stopped using

11   CPAP treatment in February 2021, whereby her symptoms returned. AR 76, *see* AR 880 ("Her

12   main concern is of prominent sleepiness. She could sleep 12-18 hrs out of a day and never feel

13   rested. Of note, she has known severe OSA with last sleep clinic visit in May 2020. She stopped

14   using CPAP completely in Feb 2021."). Her treatment professionals recommended that she

15   resume CPAP treatment. AR 883, 947. Based on this, the ALJ validly concluded that her sleep

16   apnea was nonsevere. AR 20.

17        Second, the ALJ also considered Plaintiff's testimony about pain from musculoskeletal

18   impairments. AR 18-19. The ALJ discussed evidence which shows that Plaintiff has arthritis in

19   her right ankle and experiences tenderness and pain in her ankle, shoulder, neck, and back. AR

20   18. The ALJ found that the medical record does not support the intense, immobilizing pain that

21   Plaintiff alleges. *Id.* Instead, Plaintiff showed only slightly reduced range of motion, normal

22   reflexes, and normal muscle strength. AR 18 (citing AR 925-26). When Plaintiff briefly attended

23   physical therapy in 2019, she reported decreased overall pain and increased function with daily

24

1   activities and showed minimal to no pain with weight bearing exercises. AR 18 (citing AR 569,

2   577). Plaintiff did not receive further treatment, despite her continuing pain. AR 58.

3          An ALJ may discount a claimant's testimony of pain when it is inconsistent with the

4   level of treatment received but must consider Plaintiff's reasons for not receiving treatment. *Dale*

5   *B. S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-5488-DWC, 2023 WL 2500617, at *3 (W.D. Wash.

6   Mar. 14, 2023). The ALJ inquired about the Plaintiff's decision to decline further treatment

7   during the hearing, to which Plaintiff responded that she was not aware of possible treatment for

8   arthritis and that it was difficult to make appointments because her roommate would need to take

9   off work in order to drive her. AR 58, 66-67. The ALJ appears to have considered these reasons

10  and reasonably decided Plaintiff's limited treatment was evidence discrediting the alleged

11  severity of her pain.

12  **B.      Assessment of Medical Opinions**

13         Plaintiff assigns error to the ALJ's evaluation of opinions from examining physicians

14  Andrew Tsoi, M.D. and Enid Griffin, Psy.D., as well as non-examining physicians Eugene

15  Kester, Brent Packer, M.D., M.D., Beth Fitterer, Ph.D., and Merry Alto, M.D.

16         For applications filed on or after March 27, 2017, the Administration has directed ALJs

17  to not defer to medical opinions from treating or examining sources. *See* 20 C.F.R. § 416.927(c).

18  Instead, they must evaluate the persuasiveness of all medical opinions by analyzing their

19  "supportability" and "consistency," as well as other appropriate factors. 20 C.F.R. § 416.920c(a).

20  The Ninth Circuit recently held that the "revised social security regulations are clearly

21  irreconcilable with [its] caselaw according special deference to the opinions of treating and

22  examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, 32

23  F.4th 785, 792 (9th Cir. 2022). Therefore, for applications filed after March 27, 2017, "an ALJ's

24

1  decision, including the decision to discredit any medical opinion, must simply be supported by

2  substantial evidence." *Id.* at 787

3      1.      **The May and June 2019 Opinions of Dr. Andrew Tsoi and Dr. Brent Packer**

4      Dr. Tsoi performed a Physical Functional Evaluation of Plaintiff on behalf of the

5  Washington State Department of Social and Health Services on May 28, 2019. AR 389-96. He

6  found that Plaintiff suffers from petite mal seizures which moderately impair her ability to

7  perform basic work-related activities, and he restricted her to light work. AR 390-91.  He noted

8  that Plaintiff's last seizure was in December of 2019. AR 395. He also concluded that Plaintiff

9  was "not likely to return to the work force." AR 395. The ALJ found the restriction to light work

10 persuasive, but disregarded Dr. Tsoi's statement about whether Plaintiff was likely to return to

11 the workforce. AR 26. This was not error. Beyond Plaintiff's testimony discussed above, the

12 medical record also demonstrates that Plaintiff successfully treated her seizures with medication

13 beginning around May 2019. *See, e.g.*, AR 506 ("Since her last office visit she has had a handful

14 of smaller seizures consisting of her becoming incoherent, she is distracted, and she seems

15 distant. Afterwards she feels more tired than normal . . . Overall she is doing much better than

16 she was a year ago"); AR 529 (noting that Plaintiff was "doing quite well" but did have two

17 seizures in the previous month when she missed her Topamax dosage); AR 860 (reporting

18 seizures "every 2-3 months"). Given the mildness and infrequency of Plaintiff's seizures after

19 medication, the ALJ reasonably disregarded Dr. Tsoi's statement that Plaintiff was not likely to

20 return to the workforce. AR 26.

21     Dr. Packer completed a Review of Medical Evidence on June 2, 2019, in which he

22 reviewed Plaintiff's medical records and Dr. Tsoi's report. AR 367-71. He found that Plaintiff

23 had marked environmental/non-exertional restrictions and marked limitations on her ability to

1  perform activities within a schedule, maintain regular attendance and be punctual with customary

2  tolerances. AR 368. He concluded that Plaintiff would only be capable of sedentary work. *Id.*

3  The ALJ found this opinion unpersuasive because medical evidence demonstrates that Plaintiff's

4  seizures are controlled by her medication and that the side effects of her medications were

5  materially reduced after medication adjustment. AR 26. While Plaintiff cites treatment notes

6  showing she still suffered seizures after taking medication, *see* Dkt. 13 at 4, these notes confirm

7  that her seizures are infrequent and mild. *See, e.g.,* AR 507 (Describing "smaller seizures

8  consisting of [Plaintiff] becoming incoherent, she is distracted, and she seems distant"); AR 860

9  (Plaintiff has seizures every 2 or 3 months). The ALJ's decision to discount Dr. Packer's opinion

10  is supported by substantial evidence.

11         **2.    The June 2019 Opinion of Dr. Enid Griffin**

12         Dr. Griffin performed a psychological evaluation of Plaintiff on behalf of the Washington

13  State Department of Social and Health Services on June 6, 2019. AR 424-33. She observed that

14  Plaintiff's speech was slow, she had a depressed mood, depressed perception, and impaired

15  memory, judgment, and concentration. AR 427-28. Dr. Griffin diagnosed Plaintiff with

16  depressive disorder due to another medical condition (seizures/removal of brain tumor) with

17  major depressive-like episode. AR 425. She found Plaintiff had marked limitations on her ability

18  to learn new tasks, perform routine tasks without special supervision, adapt to changes in a

19  routine work setting, be aware of normal hazards and take appropriate precautions, communicate

20  and perform effectively in a work setting, maintain appropriate behavior in a work setting,

21  complete a normal workday and work week without interruptions from psychologically based

22  symptoms, and set realistic goals and plan independently. AR 425-26.

23

24

1    The ALJ found Dr. Griffin's opinion unpersuasive, reasoning that the marked restrictions

2    were not supported by the longitudinal record. AR 21. Specifically, "the longitudinal record

3    shows that the claimant's mental impairments have been very stable on medication, and

4    examination reports throughout her treatment records consistently document normal mental

5    observations and no significant mental complaints, indicating no more than mild limits." *Id.* The

6    ALJ cited records showing that Plaintiff consistently presented as alert and oriented and had a

7    normal mood, affect, and judgment. *See* AR 446, 482, 944. Other cited records indicate that

8    Plaintiff's depression was controlled by medication. *See* AR 939-40 (noted anxiety and

9    depression symptoms were "much better" after treatment with Lexapro), AR 949 ("Anxiety and

10   depression pt has been doing well on Lexapro. Continue with the same treatment."). When

11   screened for depression, she consistently scored in the "mild" or "moderate" depression range on

12   the PHQ-9 questionnaire. AR 517-18; 696, 730, 765. Despite Plaintiff's unexplained contention

13   that the ALJ "did not cite any longitudinal evidence that actually contradicts Dr. Griffin's

14   opinion," the cited evidence directly contradicts both the observations and conclusions of Dr.

15   Griffin. This Court affirms the ALJ's decision to disregard her opinion.

16   **3.    The Non-examining Opinions of Dr. Eugene Kester, Dr. Beth Fitterer, and**

17   **Dr. Merry Alto**

18   Dr. Kester and Dr. Fitterer assessed the record in October 2019 and February 2020,

19   respectively. They diagnosed several moderate limitations on Plaintiff's understanding and

20   memory, concentration, and her abilities to perform activities pursuant to a schedule and carry

21   out detailed instructions. AR 96-125, 149-159. The ALJ found these opinions unpersuasive,

22   using the same reasons as discussed above with respect to Dr. Griffin — namely, that Plaintiff's

23   depression and anxiety are controlled by medication, and examination reports indicate no

24

1   significant mental complaints. AR 21. The ALJ reasonably concluded that the record does not

2   support the moderate limitations assigned by Drs. Kester and Fitterer.

3          Plaintiff also argues the ALJ wrongly credited the opinion of Dr. Alto, who, in February

4   2020, found Plaintiff's seizures were controlled by medication and that she could operate at a

5   light exertion level with limitations on postural activities and exposure to environmental factors.

6   Dkt. 13 at 5; AR 25. While Plaintiff argues that Dr. Alto's opinion "does not fully account for

7   [Plaintiff's] medication side effects and sleep apnea symptoms," Plaintiff fails to identify any

8   error.

9          First, Dr. Alto reviewed documents discussing Plaintiff's side effects, and appears to

10  have mentioned them in the report. *See* AR 135-36 (noting symptoms of malaise, understanding

11  and memory limitations, and sustained concentration and persistence limitations). Second, the

12  ALJ's decision to find the opinion persuasive is supported by substantial evidence. Because, as

13  discussed with respect to Plaintiff's testimony, Plaintiff's sleep apnea symptoms materially

14  decreased after medication adjustment, the ALJ reasonably credited Dr. Alto's finding that these

15  symptoms did not create more significant limitations.

16  **C.     Lay Witness Testimony**

17         ALJs are required to give germane reasons to discount the opinions of lay witnesses.

18  *Debbie P. v. Kijakazi*, 1:20-CV-00469-CWD, 2022 WL 225054, at *6 (D. Idaho Jan. 25, 2022)

19  (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.1993). Plaintiff argues that the ALJ wrongly

20  rejected the opinions of Patty Olive, a social worker, and Plaintiff's roommate. Dkt. 13 at 17.

21         On January 9, 2019, Ms. Olive observed that Plaintiff suffered from limitations in

22  memory and understanding and intellectual functioning, noting that Plaintiff "struggled to stay

23

24

1    focused." Ms. Olive "had to keep repeating what I needed her to do, as she could not remember

2    what I said, even though 30 seconds had gone by." AR 330.

3           On August 1, 2021, Plaintiff's roommate completed a lay witness statement

4    questionnaire. AR 355-61. The roommate wrote that he had seen her every day, discussed

5    Plaintiff's symptoms from her seizures and the side effects of her medication. AR 355-56. He

6    stated that she frequently complains of pain in her neck, shoulders, hands, and fingers, sleeps 16-

7    20 hours each day, doesn't stand for long periods, has concentration problems, is easily

8    overwhelmed, is frequently forgetful, and that her seizures have been "getting worse and worse

9    as time goes on." AR 356-60.

10          The ALJ reasonably discredited these opinions, to the extent they endorsed more extreme

11   limitations than the ALJ, because Plaintiff's seizures and mental impairments are controlled with

12   medication, her musculoskeletal impairments are non-severe, and her side effects have improved

13   with medication adjustments. AR 26-27. These are germane reasons to reject the statements of

14   Ms. Olive and Plaintiff's roommate and, as discussed above, they are supported by the medical

15   record.

16                            **IV.    CONCLUSION**

17          Based on these reasons and the relevant record, the Court **ORDERS** that this matter be

18   **AFFIRMED** to pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to enter

19   judgment for Defendant and close the case.

20          Dated this 14th day of August, 2023

21

22

23                                          Grady J. Leupold
                                            United States Magistrate Judge
24

ORDER ON PLAINTIFF'S COMPLAINT - 11